[No. 2685-3.   Division Three.   June 14, 1979.]

JOE ROGERS, ET AL, *Respondents,* v. THE CITY OF
TOPPENISH, ET AL, *Appellants.*

*Gary G. McGlothlen,* for appellants.

*John S. Moore,* for respondents.

MUNSON, J.—The defendants, City of Toppenish and Ronald Kramer,[1] appeal a judgment arising out of a claim of negligent representation. The principal issue is whether a municipal employee is liable, and the municipality vicariously liable, to a buyer of property for a negligent representation of the zoning classification of that property if the buyer justifiably relies upon the representation and suffers economic loss. We affirm.

The plaintiff, Joe Rogers, was a real estate broker in Toppenish. The defendant, Ronald Kramer, was the city building inspector, whose job included administration of the zoning ordinances. (He is also the fire chief.) The owner of the property in question was a fraternal organization to which Mr. Kramer belonged and had been an officer. Before Mr. Rogers entered into negotiations for the purchase of the building site, he asked one of his employees to inquire of Mr. Kramer whether an apartment house could be built on the property. Mr. Kramer told Mr. Rogers' employee the property was zoned for an apartment house; that information was relayed to Mr. Rogers. There is a dispute as to whether another call to confirm that information was made prior to or after Mr. Rogers purchased the property, but nevertheless, at least one inquiry had been made, at which time assurances were given that it was zoned for apartment houses.

██ After Mr. Rogers purchased the property, the city issued him a building permit. Following complaints from

---

[1]Although both Ronald Kramer and the City of Toppenish were defendants, we refer only to Mr. Kramer since his words were the basis for the claim of negligent representation. However, the City of Toppenish is a party on this appeal.

nearby owners of Mr. Rogers' recently acquired property, the city manager wrote Mr. Rogers a letter detailing the zoning history of the property and advising that only single–family residences or duplexes were permitted. The building permit was rescinded.[2] At all times in question,

---

[2]                                "June 27, 1975
"Mr. Joe Rogers
"Rogers Realty
"10 South Alder
"Toppenish, Washington 98948
    "RE: A Portion of Lot 4, Block 23, Mountain View Addition
"Dear Mr. Rogers:
    "The following has been obtained through a search of our records on the status of the above property:
    "August 16, 1971. An application of Lodge No.178 F&AM to the Toppenish Planning Commission was made to rezone the property local business B–1. The property had a residential or R–1 zoning at the time.
    "August 16, 1971. An application of Lodge No.178 F&AM was made to the Board of Adjustment for a special property use permit under City Ordinance A–580, Section 21, Subsection 8. This application was made concurrently with the rezone applications shown above and was contingent upon the rezone request noted above.
    "September 8, 1971. The application for a rezone on the property came before the Toppenish Planning Commission. The matter of the special use permit application was discussed. The Planning Commission set a public hearing for October 5, 1971, at 7:30 p.m.
    "September 17, 1971. A notice of public hearing was made by the Board of Adjustment setting forth the date of October 5, 1971, on the application for special use permit for the property under the section of the City Ordinance noted earlier. A list of property owners surrounding the site was attached to the notice.
    "April 9, 1973. An application for a special property use permit was filed by Lodge No.178 F&AM with the Board of Adjustment under City Ordinance A–580, Section 21, Subsection 8.
    "April 25, 1973. A notice of continuation of application for a special property use was made by the Board of Adjustment for the property. A public hearing was set for April 24, 1973. In addition, the Board continued a request for a variance from the parking requirements until a public hearing could be held on May 8, 1973.
    "May 8, 1973. The Board of Adjustment granted to the Toppenish Lodge No.178 F&AM a special property use permit under City Ordinance 580–Section 21, Subsection 8, and, further granted a variance of parking requirements under the same section.
    "It is clear that the Toppenish Lodge No.178 F&AM made concurrent applications to the Planning Commission for a rezone and to the Board of Adjustment for a special property use permit. It is also clear that the Planning Commission did not act upon the rezone request, although no evidence of denial can be found

the city possessed a zoning map which indicated the property was zoned R–1, a single–family or duplex classification; however, all parties admitted they were aware the zoning map was not always current and correct in reflecting changes in the zoning. After revocation of the building permit, Mr. Rogers attempted to rezone the property; his application was denied. The value of the property as a single– or duplex–residence site was less than if it had been zoned as a multiple–dwelling site. Since these facts were unchallenged, we accept them as verities and find there was a negligent representation of a material fact upon which Mr. Rogers relied to his damage. *J & J Food Centers, Inc. v. Selig,* 76 Wn.2d 304, 456 P.2d 691 (1969); *Brown v. Underwriters at Lloyds,* 53 Wn.2d 142, 332 P.2d 228 (1958). One who holds himself out as having skill and knowledge in a particular area will be liable to another if the information given is inaccurate and is justifiably relied upon. *Glanzer v. Shepard,* 233 N.Y. 236, 135 N.E. 275 (1922); *Murphy v. Fidelity Abstract & Title Co.,* 114 Wash. 77, 194 P. 591 (1921); *Anderson v. Spriestersbach,* 69 Wash. 393, 125 P. 166 (1912).

Initially, Mr. Kramer argues that Mr. Rogers had no justifiable right to rely upon the "informal opinion" of Mr.

---

in the minutes of the City Commission or the Planning Commission. However, the subsequent action of the Board of Adjustment upon the special use permit is evidence that denial of the rezone application was made by the Planning Commission particularly in view of the fact that action by the Board of Adjustment was contingent upon such denial.

"The evidence then shows that the property was not rezoned, but, rather, a variance from the R–1 zoning was granted for the construction and operation of a fraternal lodge. The property remains classified R–1. A building permit for apartments can not be legally issued. We must, therefore, rescind the building permit which we have issued in error. A change in zoning classification will be required should you wish to pursue the construction and operation of an apartment building.

"If you have further questions, please don't hesitate to call on me.

"Sincerely,
"/s/ Bill DaVee
"Bill R. DaVee
"City Manager"

Kramer.[3] However, there is no question that Mr. Kramer's statement that the property was zoned to allow construction of an apartment building was not an accurate statement of an existing fact. Both the zoning map and city records reflected that the zoning had never been changed from a single–family dwelling or duplex classification. Mr. Kramer also contends that Mr. Rogers was unjustified in relying on the representation because the city could have changed the zoning classification any time prior to the issuance of a valid permit, for which he therefore could not have claimed damage. *Eastlake Community Council v. Roanoke Assocs., Inc.,* 82 Wn.2d 475, 513 P.2d 36, 76 A.L.R.3d 360 (1973); *Hull v. Hunt,* 53 Wn.2d 125, 331 P.2d 856 (1958). First, this is not a case in which a zoning classification was changed prior to or subsequent to the issuance of a valid permit. Second, it is immaterial that the permit issued was invalid. Mr. Rogers did not rely on a changing of the zoning status or on the building permit, but on inaccurate statements made prior to its issuance. *Cf. Ford v. Bellingham–Whatcom County Dist. Bd. of Health,* 16 Wn. App. 709, 558 P.2d 821 (1977).

Plaintiffs contend Mr. Kramer had a duty as the administrator of the zoning ordinances to inform accurately an individual member of the public of the zoning classification concerning specific real property once the inquiry and its purpose were made known to him. We find such a duty owed to an individual member of the public.

The legislative abolition of sovereign tort immunity in 1961 applies to cities. *Kelso v. Tacoma,* 63 Wn.2d 913, 390 P.2d 2 (1964). One narrow exception to such liability is the exercise of a discretionary act; *Haslund v. Seattle,* 86 Wn.2d 607, 547 P.2d 1221 (1976); *Mason v. Bitton,* 85 Wn.2d 321, 327–28, 534 P.2d 1360 (1975); *King v. Seattle,* 84 Wn.2d 239, 525 P.2d 228 (1974); *Evangelical United Brethren Church v. State,* 67 Wn.2d 246, 407 P.2d 440

---

[3]In order to recover, the plaintiff must prove all the elements of the tort. *Sado v. Spokane,* 22 Wn. App. 298, 588 P.2d 1231 (1979).

(1965); another exception relates to purely legislative decisions. *Miller v. Pacific County,* 91 Wn.2d 744, 592 P.2d 639 (1979).

Here, the city, exercising its discretion, created a planning commission for the purpose of adopting and enforcing "coordinated plans for the physical development of the municipality." RCW 35.63.080. Having decided to embark on this endeavor, the city had the statutory power to "regulate and restrict the location and the use of buildings, structures and land for residence, trade, industrial and other purposes; . . ." RCW 35.63.080. RCW 35.63.105 provides for amendments to a comprehensive plan in the manner of adoption, certification, recording or filing.

Traditionally, municipal ordinances "impose a duty upon municipal officials which is owed to the *public* as a *whole*, so that a duty enforceable in tort is not owed to any particular *individual." Halvorson v. Dahl,* 89 Wn.2d 673, 676, 574 P.2d 1190 (1978); *Campbell v. Bellevue,* 85 Wn.2d 1, 530 P.2d 234 (1975); *Georges v. Tudor,* 16 Wn. App. 407, 556 P.2d 564 (1976). *See also Gardner v. Kendrick,* 7 Wn. App. 852, 503 P.2d 134 (1972). The rationale for the traditional rule has been the specter of a municipality's unlimited liability. *Gerneth v. Detroit,* 465 F.2d 784, 787 (6th Cir. 1972); *cert. denied,* 409 U.S. 1109 (1973); *Brennen v. Eugene,* 30 Ore. App. 1093, 569 P.2d 1083 (1977). In *Brennen,* the court noted the policy underlying the traditional rule is that an enactment of legislation for the public welfare should not be discouraged by subjecting the governmental body to unlimited liability. The distinction between a duty to the public and the duty to a private individual has, however, been successfully challenged in other states. *Adams v. State,* 555 P.2d 235 (Alaska 1976); *Coffey v. Milwaukee,* 74 Wis. 2d 526, 247 N.W.2d 132 (1976).[4]

---

[4]In *Coffey v. Milwaukee, supra* at 540, the court held that "[a]ny duty owed to the public generally is a duty owed to individual members of the public"; however, the court did reserve the right not to impose as a matter of public policy in six specific instances, none of which are applicable here:

■ We find, however, that we need not adopt the policy of Alaska and Wisconsin because, under the circumstances and nature of this case, a community land use plan directly affects the class of individuals of which the plaintiff is one. It is inherent in the scheme of such community planning that an individual who desires to purchase a piece of property for a particular purpose would inquire of the city officials as to its zoning classification. The most logical inquiry would be to the zoning administrator; thus, the purchaser can determine whether his purpose for purchasing the property is consistent with the city's comprehensive plan. Such an inquiry imposes upon the zoning administrator the duty to answer accurately; there is nothing discretionary about the duty. The response is in the nature of a "ministerial" or "operational" function; one which each member of the public has a right to expect will be made accurately.

When the initial information was given, Mr. Kramer consulted neither the zoning maps nor the city records. Additionally, the city manager's letter rescinding Mr. Rogers' building permit indicates the city's zoning records were not kept current. For Mr. Rogers to have searched the city files to the extent that the city manager did would have been an extreme, if not impossible, burden. Although Mr. Rogers had been a member of the planning commission, there is nothing in the record to indicate that he knew or could have known of any subsequent change in the classification of the property. The current zoning classification was solely within the knowledge of the zoning administrator. Based upon these facts, the municipality should be held to the same standards that the law imposes upon individuals.

(1) The injury is too remote for the negligence; or (2) the injury is too wholly out of proportion to the culpability of the negligent tort-feasor; or (3) in retrospect it appears too highly extraordinary that the negligence should have brought about the harm; or (4) because allowance of recovery would place too unreasonable a burden on the negligent tort-feasor; or (5) because allowance of recovery would be too likely to open the way for fraudulent claims; or (6) allowance of recovery would enter a field that has no sensible or just stopping point.

*Coffey v. Milwaukee, supra* at 541.

18 E. McQuillin, *Municipal Corporations* § 53.01a, at 102 (3d ed. 1977).

Furthermore,

(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

Restatement (Second) of Torts § 552(3) (1977). Recently, the City of Tacoma and Pierce County were held liable for negligent representations in which the court cited the above section from the Restatement in support of its decision. *Wilber v. Western Properties,* 22 Wn. App. 458, 462–64, 589 P.2d 1273 (1979). The principle applies equally to the facts of this case.[5]

The recent case, *Baerlein v. State,* 92 Wn.2d 229, 595 P.2d 930 (1979), is distinguishable since there was a complete statutory disclaimer to any individual member of the public. Here, however, the *Campbell* exception is applicable as quoted in *Baerlein,* at page 234, "where a relationship exists or has developed between an injured plaintiff and agents of the municipality creating a duty to perform a mandated act for the benefit of particular persons or class of persons, then tort liability may arise." The most logical place to receive zoning information is from a zoning administrator who has the duty to give accurate information upon which a plaintiff has the right to rely.

We find nothing in the trial record to reflect that the court held the defendants liable on an allegation of negligence in issuing the building permit. At most, the issuance of the building permit was further substantiation of the negligent representation. Therefore, we do not discuss

---

[5]The philosophy of this court is to restrict itself to the issues of the case. This opinion is limited to its facts and does not imply that every municipal or state employee who gives a casual response to any inquiry will be liable for his answer. We do not anticipate this case will be the last word in this area; this type of claim will need further definition and refinement by the courts.

562

whether the negligent issuance of a building permit is actionable. *Cf. Haslund v. Seattle, supra.*

Judgment affirmed.

McInturff and Roe, JJ., concur.

Reconsideration denied July 11, 1979.

Review denied by Supreme Court October 12, 1979.