[No. 48327-2.   En Banc.   September 15, 1983.]

J & B DEVELOPMENT COMPANY, INC., *Respondent,*
v. KING COUNTY, *Petitioner.*

*Norm Maleng, Prosecuting Attorney,* and *Robert D. Johns, Deputy,* for petitioner.

*Douglas R. Hartwich, Brian E. Lawler,* and *Short & Cressman,* for respondent.

*Douglas N. Jewett, City Attorney for Seattle, Ellen D.*

*Peterson, Assistant, Linda M. Youngs, City Attorney for Bellevue,* and *Richard L. Andrews, Assistant,* amici curiae for petitioner.

STAFFORD, J.—The issue herein is whether a county which issues a building permit to a developer owes that developer a duty to exercise reasonable care in so doing. We hold the county does have such a duty and thus reverse the Superior Court's judgment.

Early in 1978, J & B Development Company (J&B) became interested in an unplatted lot located in South King County on the corner of South 136th Street and 10th Avenue South. After visiting the property, William Yenter, one of the owners of J&B, contacted the King County Building and Land Development Division and discussed the property with an unknown county employee. From this discussion he learned the lot was zoned single–family residential and the previous owner had obtained preliminary approval for an application to short plat the property.

J&B was not interested in pursuing the short plat, deciding instead to build a single–family residence. Consequently, J&B purchased the property contingent upon obtaining approval of a single–family residence building permit.

On May 16, 1978, Jack L. Lamoreux, the other owner of J&B, went to the King County Building Department to apply for a single–family building permit. He submitted two copies of a lot plan to King County permit technician Betty Lee. The plan contemplated construction of one of the two home models that J&B usually builds. The house was to front on South 136th Street. The proposed construction was located in the same area of the lot as a previous home which had been torn down.

After Lee examined the legal description on the plot plan and consulted a Kroll map with zoning overlays, she issued a permit. She failed to recognize, however, that 10th Avenue South had only a 30–foot right of way alongside the property and that the King County Code (K.C.C.) 21.48.110

required an additional setback of approximately 18 feet. The planned construction for which Lee issued the building permit did not satisfy the additional setback requirement.

Although J&B was unaware of the additional setback requirement, it did have copies of the King County zoning code and the uniform building code in its office. J&B consulted the zoning code prior to beginning any work. Further, before J&B purchased the property, it obtained a copy of the preliminary approval of the pending short plat application. That document indicated the one requirement for final approval was the dedication of an 18–foot right of way along 10th Avenue South.

After J&B had excavated and leveled the property and set the foundation forms, it requested an inspection. On June 6, 1978, Robert Aiello, a county building inspector, conducted a typical 15–minute inspection during which he visited the property, inspected the foundation forms and setback, and approved both. Aiello measured the setback from the stake lines set by J&B without looking at other lots on the street and, thus, may not have noticed there was only a 30–foot right of way adjacent to J&B's lot. In addition, Aiello was unaware of K.C.C. 21.48.110 and therefore did not detect the setback error. The trial court found, however, that detection of the error during a field inspection was impossible without a complete survey of the road right of way which was not available to Aiello.

After the inspection, J&B continued construction. It poured the foundation, constructed a subfloor, and started to construct the wall frames. Several neighbors complained to the County that the construction left an insufficient right of way. The County then realized that the building violated K.C.C. 21.48.110. On June 16, 1978, Aiello posted a stop work order at the site. On June 27, the County suspended the permit it had issued.

J&B initiated the present action, seeking an injunction against the County's suspension or, in the alternative, damages for lost rent and additional construction costs. The trial court rejected both claims holding that K.C.C.

21.48.110 was both applicable and constitutional. It also ruled that J&B had not acquired any vested right when it obtained the permit and that the County was not equitably estopped from suspending the permit. Finally, it held the County was not liable for damages. While the trial court found that Lee had not exercised due care,[1] it held that the County owed no duty of care to J&B.

On appeal the Court of Appeals reversed. While we affirm the result reached by the Court of Appeals, we do not agree with its legal analysis.

The Court of Appeals rejects the "public duty doctrine" as merely another form of "sovereign immunity" abrogated by RCW 4.96.010. This is not correct. The two concepts exist independently.

The "public duty doctrine" provides generally that for one to recover from a municipal corporation in tort it must be shown that the duty breached was owed to the injured person as an individual and was not merely the breach of an obligation owed to the public in general (*i.e.*, a duty to all is a duty to no one). 18 E. McQuillin, *Municipal Corporations* § 53.04b, at 127 (3d ed. 1977). The concept of "sovereign immunity," on the other hand, provides generally that despite the existence of apparent duty a municipal corporation, in the exercise of governmental functions, is immune from tort liability. This does not occur from a denial of the tort but because the resulting liability in tort is disallowed under all such cases. W. Prosser, *Torts* § 131 (4th ed. 1971). In short, the "public duty doctrine" recognizes the existence of a tort, authorizes the filing of a claim against a municipality and also recognizes applicable liability subject to some limitations. The concept of "sovereign immunity," while recognizing the existence of a tort, denies all liability within the limits of the immunity. W. Prosser,

---

[1]The court made no findings regarding the exercise of due care by Aiello and J&B. With respect to J&B, however, the court did find (1) that J&B's review of the preliminary plat approval should have put it on notice that problems might arise if it did not provide for an additional 18–foot setback, and (2) that J&B was in just as good a position as Lee to detect the violation of K.C.C. 21.48.110.

*supra.*

The Legislature, by adopting RCW 4.96.010, declared that municipal corporations "shall be liable for damages arising out of their tortious conduct, or the tortious conduct of their officers . . . to the same extent as if they were a private person or corporation". It should be noted, however, that this type of legislation creates no new causes of action, *Edgar v. State,* 92 Wn.2d 217, 595 P.2d 534 (1979), *cert. denied,* 444 U.S. 1077 (1980), imposes no new duties and brings into being no new liability. *Georges v. Tudor,* 16 Wn. App. 407, 556 P.2d 564 (1976). At best it gives new life to an existing, but previously unenforceable, potential liability or remedy by removing the defense of sovereign immunity. *Georges v. Tudor, supra. See also LaPlante v. State,* 85 Wn.2d 154, 531 P.2d 299 (1975); 18 E. McQuillin § 53.04b, at 126.

It is a well recognized principle of tort law that a fundamental element of actionable negligence is the existence of a duty owed by the person charged with negligence to the one injured. E. McQuillin, *supra.* To be actionable, the duty owed must focus on the one injured, not on the public at large. To sustain an action against an individual, it is necessary to determine whether one is under a duty to a claimant as opposed to the general public. Similarly, to sustain an action against a municipality it is necessary to decide whether a municipality is under a general duty to a nebulous public or whether that duty has focused on the claimant.

Without question, the *standard* rationale of the "public duty doctrine" has historically been (1) prevention of excessive governmental liability and (2) the need to avoid hindering the governing process. Nevertheless, the "public duty doctrine" has a third logical application in tort litigation. A duty to the public in general is usually considered a duty to no one in particular (*i.e.,* the "public duty doctrine"). When considered in combination with the "special relationship" rule, however, it becomes a mechanism for focusing upon whether a duty is actually owed an individ-

ual claimant rather than the public at large. The "special relationship" rule is in fact the focusing tool. For example, assume a county voting registrar has a duty to refrain from registering nonresidents. It would be difficult, if not impossible, for an individual citizen to recover in tort against the County for the negligent violation of that duty. In other words, it would be difficult to demonstrate the necessary "special relationship" to focus the County's duty on the claimant. On the other hand, under proper facts, the "special relationship" rule, as a focusing mechanism, would transform the County's general nebulous duty from one owed to the public to a duty owed an individual victim.

It is at the point of having focused the duty through the "special relationship" that RCW 4.96.010 should be invoked. It is at this juncture a claimant, whether suing a person or a municipality, must establish a breach of duty and resultant damages. RCW 4.96.010 employed in this way insures that the municipality's tortious conduct will be treated the same as that of a private citizen. On the other hand, application of RCW 4.96.010 at the outset, as suggested by the Court of Appeals, leads to the imposition of a duty against a municipality where in fact none may exist insofar as an individual claimant is concerned. To say, as the Court of Appeals does, that "[a] duty owed to the public generally is also a duty owed to individual members of the public" has the danger of creating new duties where none may have existed previously, even under the most liberal consideration of RCW 4.96.010 or similar statutes. *J & B Dev. Co. v. King Cy.*, 29 Wn. App. 942, 951, 631 P.2d 1002 (1981). As indicated above, it is well recognized that RCW 4.96.010 was not intended to create new duties where none existed before. Rather, it was to permit a cause of action in tort *if a duty could be established,* just the same as with a private person.

In sum, one must first establish the existence of a duty and then apply RCW 4.96.010 to insure that, having established the duty, claimants may proceed in tort against municipalities to the same extent as if the municipality

were a private person. Consequently, the case must be resolved by recognizing that the facts herein fall clearly within what has heretofore been recognized as a mere "exception" to the "public duty doctrine." The facts of this case establish a "special relationship" between the builder and the County which in turn gives rise to a duty.

As a matter of common sense, a home builder should be able to rely on the county division of land development to furnish accurate information as well as valid building permits. *See Rogers v. Toppenish,* 23 Wn. App. 554, 560, 596 P.2d 1096 (1979). These are among the reasons for which the office was created and its agents employed. We agree with the Court of Appeals that the issuance of a building permit, especially when coupled with a building inspection as occurred in this case, should trigger the same kind of duty found to exist in *Rogers.* It makes no sense to hold that a person may rely on the accuracy of information provided by a county official and, at the same time, hold that such a person cannot rely on the accuracy of a building permit issued by the same agency.

If a home builder cannot rely on an official building permit issued by the county, there is little reason for requiring one, unless it is viewed as merely another mechanism for gathering taxes. Logic tells us, however, that the issuance of a building permit is an official county action by which approval is given a builder to erect a structure of the type and at the place approved.

In this case the County is the only governmental body empowered to grant or deny building permits. Thus, builders are forced to obtain such permits from the County's designated agency. In addition builders are required to have an initial inspection by a county building inspector before construction can proceed beyond the "foundation stage." The builder has no choice. If a builder is to rely on anyone, it must be on the county agency.

The issuance of a building permit inherently implies that the issuing agent has verified that the proposed structure is in compliance with applicable code provisions. Moreover, in

this case, the subsequent inspection and approval by the county inspector reinforced J&B's earlier reliance on the validity of the building permit. The absence of an express assurance, like that given by the county official in *Rogers,* does not justify denying the existence of a duty.

Although our decision in *Baerlein v. State,* 92 Wn.2d 229, 595 P.2d 930 (1979) adheres to the traditional rule that a governmental agency owes a duty to the public as a whole and not to any particular individual, we have long recognized an exception thereto where a "special relationship" exists. *Campbell v. Bellevue,* 85 Wn.2d 1, 530 P.2d 234 (1975); *Rogers v. Toppenish, supra.*

J&B dealt directly with the County through its agents. This element of direct contact, missing in *Baerlein,* was present in both *Campbell* and *Rogers.* Thus, in this case, the nonliability rule announced in *Baerlein* should give way to the "special relationship" established. As in *Rogers,* the county agents undertook a duty to perform a service. By so doing, the county agents undertook a duty to use reasonable care in performing that service.

Further, the permit and inspection requirements do not create a duty of care applicable merely to the public in general. Rather, they apply to a limited class of citizens, the builders. When a member of that class justifiably relies on the accuracy of the permit and inspection and subsequently suffers an economic loss due to the inaccuracy of the agents, the County has breached a duty that demands redress.

> The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

Restatement (Second) of Torts § 552(3), at 127 (1977). *See also Wilber v. Western Properties,* 22 Wn. App. 458, 463–64, 589 P.2d 1273 (1979); *Peru v. Querciagrossa,* 73 Ill. App. 3d 1040, 392 N.E.2d 778 (1979). The duty to provide accurate information should be no different than the duty

to issue a valid permit.

J&B requested a building permit and an inspection from the County. In responding to that request, the County had a duty to J&B to exercise reasonable care in issuing that permit. As with the duty to furnish accurate information discussed in *Rogers* at page 560, the duty to issue a valid permit may be characterized as follows:

> [T]here is nothing discretionary about the duty. The response is in the nature of a "ministerial" or "operational" function; one which each member of the public has a right to expect will be made accurately.

*See Gordon v. Holt,* 65 A.D.2d 344, 412 N.Y.S.2d 534 (1979).

Once the existence of a duty and a breach thereof is shown, the plaintiff must next show a causal relationship between that breach and some damages. Finally, recoverable damages may be reduced under rules of comparative negligence. *See* former RCW 4.22.010 (applicable to all claims arising between April 1, 1974 and July 26, 1981). The trial court made no findings regarding causation, damages or comparative negligence. We must therefore remand this cause for further findings on these issues.

Inasmuch as we have determined that the County breached a duty to J&B it is not necessary to reach the second issue—whether a county is estopped from revoking a mistakenly issued building permit unless it pays the costs of correcting the violations upon which the revocation is based.

The judgment of the trial court is reversed and the cause remanded for further proceedings consistent with this opinion.

WILLIAMS, C.J., and BRACHTENBACH, DOLLIVER, DORE, DIMMICK, and PEARSON, JJ., concur.

UTTER, J. (concurring in the result)—I concur in the result reached by the majority. For the reasons stated in my concurring opinion in *Chambers–Castanes v. King Cy.,*

100 Wn.2d 275, 669 P.2d 451 (1983), however, I believe we should eliminate the "public duty doctrine" and simply apply general principles of tort law. The majority today moves far toward this goal by its narrow interpretation of the doctrine and the doctrine in this state may now be just a restatement of the general rule that liability for negligence requires a showing of a duty running to the plaintiff. Thus limited, however, giving the rule the special label "public duty doctrine" is unnecessary and obscures what is the proper analytical approach—hence, I would rid ourselves of this albatross once and for all.

I

To begin, I agree with the majority's general statements that RCW 4.96.010 was not intended to create duties where none existed before. I am also willing to concede that the Court of Appeals broad statement that "[a] duty owed to the public generally is also [always?] a duty owed to individual members of the public" (*J & B Dev. Co. v. King Cy.*, 29 Wn. App. 942, 951, 631 P.2d 1002 (1981)) is probably overbroad. Indeed, it is always true that one of the elements of a cause of action for negligence is "the existence of a duty owed *to the complaining party*". (Italics mine.) *Hansen v. Washington Natural Gas Co.*, 95 Wn.2d 773, 776, 632 P.2d 504 (1981). *Cf. Davis v. Niagara Mach. Co.*, 90 Wn.2d 342, 346, 581 P.2d 1344 (1978) (duty established by statute gives rise to action for negligence only if plaintiff in class to be protected).

If the majority intends to limit the public duty doctrine to this principle, little harm is done. Other authorities, however, including some of those cited by the majority, appear to have given the doctrine a broader scope. For example, McQuillin prefaces his discussion of the doctrine by the caveat that "the tort liability of a public official is not in all circumstances identical with that of a private individual". 18 E. McQuillin, *Municipal Corporations* § 53.04b, at 126 (3d ed. 1977). In *Georges v. Tudor,* 16 Wn. App. 407, 556 P.2d 564 (1976), our Court of Appeals relied

upon the public duty doctrine in holding that a negligent building inspection did not give rise to any liability to lessees and buyers whose property interests were damaged by the building's later collapse. *See Georges,* at 409–10. Yet numerous cases have held insurance companies liable to third parties in comparable situations (*see* cases cited in *Adams v. State,* 555 P.2d 235, 240–41 (Alaska 1976)) and the court in *Georges* made no attempt to distinguish these cases.

This broader view of the public duty doctrine is clearly inconsistent with the mandate of RCW 4.96.010 that governmental entities shall be liable for their torts "to the same extent as if they were a private person or corporation". By its description of the public duty doctrine as merely not creating duties which did not previously exist, the majority suggests that it would not approve of this broader view. At least, I presume, the majority would require that contrary authorities applicable to private defendants be distinguished on some basis other than the nature of the defendant.

Even if the public duty doctrine as enunciated by the majority merely restates general duty principles as applied to public bodies, I would disavow it. Such a restatement is superfluous. Moreover, it unnecessarily injects confusion into the law, for the existence of a special "doctrine" for one type of defendant implies some different analysis is to be applied in such cases.

## II

My approach would be to analyze the duty question entirely without reference to the defendant's public status. In any negligence case, the duty question turns on policy considerations addressed to the court and the factual question of foreseeability addressed to the trier of fact. *Bernethy v. Walt Failor's, Inc.,* 97 Wn.2d 929, 933, 653 P.2d 280 (1982). RCW 4.96.010 mandates, however, that our analysis of the policy aspect of the question be unaffected by the public status of the defendant. Where possible,

analogies should be drawn to private parties performing comparable functions. For example, in *Adams v. State, supra,* the Alaska Supreme Court treated a public fire inspector just as a private insurance inspector and found a governmental duty because it recognized an analogous duty on the part of the private party. *See Adams,* at 240–41. In a case involving the negligence of law enforcement personnel, such as *Chambers–Castanes v. King Cy., supra,* we might analogize to the negligence of a private security firm hired by a large condominium association.

Where a unique public function is involved, drawing an analogy to comparable private functions is impossible. In such circumstances, one could by the public duty doctrine create a general rule of policy that the public body never has a duty toward the individual absent some special relationship.

I do not understand the majority to advocate such an approach. Indeed, we recognized by our analysis in *Halvorson v. Dahl,* 89 Wn.2d 673, 574 P.2d 1190 (1978) that governmental entities may be liable for failure to perform a statutory duty and that the question turns on the purpose and policies underlying the particular statute in question. *See Halvorson,* at 676–77. An absolute rule that, absent a special relationship, uniquely governmental functions may never give rise to a duty would also be inconsistent with the spirit, if not the purpose, of RCW 4.96.010.

The command of RCW 4.96.010 that governmental entities be liable for their torts to the same extent as private parties demands that even if no analogy can be drawn to a private function we nevertheless apply standard tort analysis. In analyzing the duties which arise out of performance of a uniquely public function, we should look to the same principles we look to in delineating the duties of private parties, *i.e.,* foreseeability and any pertinent policy concerns. *See Brennen v. Eugene,* 285 Or. 401, 407, 591 P.2d 719 (1979). The public nature of the defendant, however, should be treated as entirely irrelevant.

## III

Applying traditional tort principles in the present case, I reach the same conclusion as the majority—that King County owed J & B Development Company a duty and that the County breached that duty.

The threshold question in an action for negligence is whether the defendant owed a duty to the plaintiff. *Bernethy v. Walt Failor's, Inc., supra* at 932. Issuance of a building permit is in the nature of a representation that the proposed construction is in accordance with applicable governmental regulations. *See Gordon v. Holt,* 65 A.D.2d 344, 412 N.Y.S.2d 534 (1979). An entity, private or public, which makes such a representation in the course of its business has a duty to take reasonable care to assure that it is correct. *Rogers v. Toppenish,* 23 Wn. App. 554, 555–56, 596 P.2d 1096 (1979); Restatement (Second) of Torts § 552(1) (1977). In the present case, therefore, the County had a duty toward J & B to exercise due care in issuing a building permit.

Once the existence of a duty is shown, the plaintiff in a negligence action must next show a breach of the duty and a causal relationship between that breach and some injury. *Bernethy v. Walt Failor's, Inc., supra* at 932. Finally, recoverable damages may be reduced under rules of comparative negligence. *See* former RCW 4.22.010 (applicable to all claims arising between April 1, 1974, and July 26, 1981). While the trial court's express finding that Betty Lee, the County's employee, did not exercise due care is equivalent to a finding that the County breached its duty toward J & B, the court made no findings regarding causation, damages, or comparative negligence. We must therefore remand for further findings on these questions.

Thus, I reach a result in the present case identical to that of the majority. Indeed, it is not at all clear to me that the result produced by my approach would ever differ significantly from those reached under the public duty doctrine as enunciated by the majority today. Simply applying the standard tort rules applicable to private parties does, how-

ever, have the advantage of simplification and provides greater assurance that special treatment will no longer be given to governmental entities in the field of tort law. I urge this court to take such a final step toward the full implementation of RCW 4.96.010.

ROSELLINI, J. (dissenting)—I respectfully dissent and would affirm the trial court. The Superior Court found that the review of the preliminary plat approval for J & B Development Company should have put it on notice that problems might arise if it did not provide for additional 18–foot setbacks, and that J & B was in just as good a position as Lee to detect the violation of King County Code 21.48-.110.

J & B's knowledge of the required setback is inconsistent with the conclusion that the County's duty to J & B was breached.