[No. 19331-1-II.    Division Two.    April 11, 1997.]

KENNETH MOORE, ET AL., *Respondents*, v. SUSAN WAYMAN, ET AL., *Respondents*, PIERCE COUNTY, *Appellant.*

*John W. Ladenburg, Prosecuting Attorney,* and *Frank H. Krall, Deputy,* for appellant.

*Thomas F. Gallagher* and *Smith Alling Lane*; and *Carol MacKinnon,* for respondents.

BRIDGEWATER, A.C.J. — Pierce County appeals a judgment that held it responsible for negligent inspection of a residence based upon a special relationship with the builders. We hold that building code compliance inspections are a governmental, not proprietary, function. We also

hold that the public duty doctrine remains constitutional because the Supreme Court has not abolished it. We hold that with no express assurance that the residence was in compliance with building codes, there is not sufficient evidence to support the jury's finding of a special relationship as an exception to the public duty doctrine. Further, absent evidence of actual knowledge by building inspectors of violations that continued after notice of the violations to the builders, there is not sufficient evidence of a failure to enforce that would act as an exception to the public duty doctrine. Finally, there is no merit to the argument that the Legislature intended to remove the enforcement of building codes as an exception to the public duty doctrine and transferred the liability from builders to the counties. We reverse.

This case arises out of the purchase of a house that was so badly constructed that the buyers believe it is uninhabitable. Ken and Madelon Moore (the buyers) sued Susan Wayman and Darius Willett, doing business as Great Habitations, Inc. (collectively referred to as the builders); Pierce County; the realtors who sold them the house; an adjacent property owner; and the appraiser. At trial, the only claim remaining was the builders' cross-claim against the County for negligent inspection, which the builders had assigned to the buyers. The jury found the County liable for negligence. The County brings this appeal, claiming that the public duty doctrine, which holds that government is not liable to individuals except in certain circumstances, relieves them from liability for negligence. The builders and the buyers both responded and brought their own cross-appeals, but they adopt each other's arguments.

The buyers entered into an agreement to buy a Gig Harbor house from Wayman in July 1991. The builders had built the home for themselves in 1990. During the course of the construction, Pierce County building inspectors came to the site and inspected the house for compliance with the local building code. After several inspec-

tions, the County issued a certificate of occupancy to the builders.

The construction of the house was plagued with problems. Apparently, Willett, who was supervising the building, was completely unfamiliar with the building code and repeatedly made errors in construction. The buyers were unaware of the problems with the house and did not have an inspection contingency clause in their contract of sale. After moving into the house, the buyers discovered that the house had several problems with its construction, making the house essentially uninhabitable.

The buyers brought suit in Pierce County Superior Court against the various defendants. Several of the defendants cross-claimed against each other, including the builders' cross-action against the County for negligence and contribution. The County's motion for summary judgment against the realtors, the appraiser, and the buyers was granted. The trial court ruled as a matter of law that the builders had established that a special relationship existed between the builders and the County, thus establishing an exception to the public duty doctrine. The County appealed the summary judgment order. The trial court agreed to strike the finding of special relationship from its order and submit the issue to the jury, and the appeal was dismissed.

The buyers subsequently settled with all remaining defendants except the County. The builders assigned their claim against the County to the buyers as a part of the settlement agreement. The buyers, standing in the shoes of the builders, continued to trial on the claim against the County. The jury found that the County was negligent in its inspection of the house and that this negligence was the proximate cause of 85 percent of the buyers' economic and non-economic damages, while the builders were liable for 15 percent of the damages.

The County moved for judgment as a matter of law, claiming that the builders failed as a matter of law to establish the elements of the special relationship exception

and that the builders could not assign their claim against the County to the buyers. The motion was denied.

## I
## APPLICABILITY OF THE PUBLIC DUTY DOCTRINE

The builders' claim against the County is for negligence in approving the house for occupation when it failed to meet building code requirements. The County argues that a verdict finding it liable was improper because under the "public duty doctrine," it owed no duty to the builders or the buyers. The builders' claim prevailed because the jury found that they had established the elements of the "special relationship" exception to the public duty doctrine, thus establishing that the County did owe a duty of due care to the builders. The County contends that as a matter of law the evidence was insufficient to establish the existence of a special relationship between it and the builders. The buyers/builders, in response, claim that the public duty doctrine does not apply to this case. We first address the applicability of the public duty doctrine; then we turn to the proof of exceptions.

### A. Proprietary Function

The buyers/builders contend that the public duty doctrine should not apply because building code compliance inspections should now be considered proprietary functions, not governmental functions. The public duty doctrine does not apply where the government is performing proprietary functions. *Bailey v. Town of Forks*, 108 Wn.2d 262, 737 P.2d 1257 (1987). The buyers argue that because RCW 19.27.050[1] of the state building code authorizes local governments to contract out the inspection service, inspection is a proprietary act. "A government acts in a propri-

---

[1]RCW 19.27.050 states in pertinent part: "Any county or city not having a building department shall contract with another county, city, or inspection agency approved by the county or city for enforcement of the state building code within its jurisdictional boundaries."

etary capacity 'when it engages in a business-like venture as contrasted with a governmental function.' " *Hoffer v. State*, 110 Wn.2d 415, 422, 755 P.2d 781 (1988) (citing BLACK'S LAW DICTIONARY 1097 (5th ed. 1979)), *reconsidered on other grounds*, 113 Wn.2d 148 (1989). Medical and psychiatric care are examples of a proprietary functions. *See Petersen v. State*, 100 Wn.2d 421, 671 P.2d 230 (1983). Building code inspections are not a part of a state business venture; they are an example of the governmental function of ensuring compliance with state law. Thus, building inspections are not proprietary acts.

Historically, as conceded by buyers/builders in their briefs, these inspections have been considered as governmental, not proprietary; and the Supreme Court has applied the public duty doctrine to building code compliance inspections. *See Taylor v. Stevens County*, 111 Wn.2d 159, 759 P.2d 447 (1988). Further, the section of the building code referred to by the buyers, RCW 19.27.050, was passed in 1974 and extant when the Supreme Court reached its former determinations concerning the applicability of the public duty doctrine to building code compliance investigations. We see no justification to depart from Supreme Court precedents. And we have not been furnished any authority indicating such a departure is permitted.

## B. Constitutionality

■ The buyers argue that the public duty doctrine should be abandoned as unconstitutional because it violates the separation of powers doctrine by reviving the abolished sovereign immunity doctrine. The Washington Constitution, article II, section 26 states: "The legislature shall direct by law, in what manner, and in what courts, suits may be brought against the state." This state abolished sovereign immunity in 1967. RCW 4.96.010.[2] The public duty doctrine is not another form of sovereign

_____

[2]Former RCW 4.96.010 (effective 1967) provides in relevant part: "All political subdivisions, municipal corporations, and quasi municipal corporations of the state, whether acting in a governmental or proprietary capacity, shall be li-

immunity. *J & B Dev. Co. v. King County*, 100 Wn.2d 299, 303-306, 699 P.2d 468 (1983). The public duty doctrine merely serves as a tool for the court to determine if a municipality owes a duty to the plaintiff. *Chambers-Castanes v. King County*, 100 Wn.2d 275, 288, 669 P.2d 451, 39 A.L.R.4th 671 (1983). "Although the Legislature abolished sovereign immunity for municipal corporations in 1967, it did not thereby create any new causes of action or liability. . . . The public duty doctrine recognizes that a fundamental element of any negligence action is a duty owed by the defendant to the plaintiff." *Meaney v. Dodd*, 111 Wn.2d 174, 178, 759 P.2d 455 (1988) (citations and footnote omitted). The Supreme Court rejected the buyer's argument in *J & B Dev. Co.* when it held that the public duty doctrine does not revive sovereign immunity. *Id.* at 303-06. Although the builders invite us to disregard the Supreme Court's determination, we follow the Supreme Court's holding in *J & B Dev. Co., Taylor* and *Atherton Condominium Apartment-Owners Ass'n v. Blume Dev. Co.*, 115 Wn.2d 506, 799 P.2d 250 (1990).

## II
## EXCEPTIONS TO THE PUBLIC DUTY DOCTRINE

The public duty doctrine serves as a focusing tool for determining the scope of the duty owed by municipal corporations. *Meaney*, 111 Wn.2d at 178. Any negligence action must be based on a duty owed by the defendant to the plaintiff. *Id.* Because most state and municipal laws "impose duties owed to the public as a whole and not to particular individuals," the plaintiff seeking recovery from a municipal corporation in tort must show that "the duty breached was owed to the injured person as an individual and . . . not merely . . . owed to the public in general." *Id.* (quoting *Bailey*, 108 Wn.2d at 265).

■ The exceptions to the public duty doctrine set forth

able for damages arising out of their tortious conduct, or the tortious conduct of their officers, agents or employees to the same extent as if they were a private person or corporation."

the circumstances where the duty is specific to the plaintiff. There are four particular exceptions:

> (1) when the terms of a legislative enactment evidence an intent to identify and protect a particular and circumscribed class of persons (legislative intent); (2) where governmental agents responsible for enforcing statutory requirements possess actual knowledge of a statutory violation, fail to take corrective action despite a statutory duty to do so, and the plaintiff is within the class the statute is intended to protect (failure to enforce); (3) when governmental agents fail to exercise reasonable care after assuming a duty to warn or come to the aid of a particular person (rescue doctrine); (4) where a relationship exists between the governmental agent and any reasonably foreseeable plaintiff, setting the injured plaintiff off from the general public and the plaintiff relies on explicit assurances given by the agent or assurances inherent in a duty vested in a governmental entity (special relationship).

*Bailey*, 108 Wn.2d at 268 (citations omitted).

## A. Special Relationship Exception

The jury in this case found that the "special relationship" exception applied. A special relationship between the government agency and the plaintiff gives rise to an actionable duty of care where "(1) there is direct contact between the public official and the plaintiff, (2) the official, in response to a specific inquiry, provides express assurances that a building or structure is in compliance with the building code, and (3) the plaintiff justifiably relies on the representations of the official." *Taylor v. Stevens County*, 111 Wn.2d 159, 171, 759 P.2d 447 (1988). When the elements are met for a special relationship, the government "owes the plaintiff a duty of due care . . . . *Meaney v. Dodd*, 111 Wn.2d 174, 179, 759 P.2d 455 (1988).

The County has three assignments of error, relating back to its argument that there is not sufficient evidence for the finding that a special relationship existed between

the builder and the County.[3] Two of these assignments deal with pretrial summary judgment motions and the third challenges the trial court's denial of the County's motion for judgment notwithstanding the verdict. We do not review the County's argument regarding the denial of its summary judgment motion against the County because the standard of review for the County's judgment notwithstanding the verdict eclipses the summary judgment standard. If there was substantial evidence for the jury's verdict against the County, then obviously there was a genuine issue of material fact. If there is not substantial evidence for the verdict, then the remedy is reversal and the County's summary judgment argument is then moot. Therefore, we review only the propriety of the trial court's denial of the motion for judgment notwithstanding the verdict.

█ A posttrial motion for judgment notwithstanding the verdict "is a challenge to the sufficiency of the evidence to support the verdict." *State v. Hall*, 74 Wn.2d 726, 727, 446 P.2d 323 (1968). In appellate review,

> the evidence and all reasonable inferences must be viewed and construed in a light most favorable to the party having the benefit of the verdict. If, when the evidence is so viewed, there appears competent and substantial evidence supportive of the verdict, then the verdict must be permitted to stand. In this respect, no element of discretion is involved when passing upon a motion for judgment notwithstanding the verdict. *Frasch v. Leedom*, 62 Wn.2d 410, 383 P.2d 307 (1963). Such a motion can be granted only when it can be said, as a matter of law, that there is no competent and substantial evidence upon which the verdict can rest.

*Hall*, 74 Wn.2d at 727.

---

[3]The county has not specifically assigned error to the jury's conclusion that a special relationship existed. The builders claim that failure to assign error to the jury's conclusions of law make these the law of the case. None of the cases cited by the builders for this proposition apply to jury verdicts. It is clear from the county's motion for judgment notwithstanding the verdict and the county's arguments to this court for reversal that the county challenges the jury's conclusions of law.

The buyers/builders claim that there is sufficient evidence to support the jury's finding of a special relationship. Not one of the parties contests that there was direct contact between the builders (specifically the contractor) and the County inspectors. The dispute is over whether there was a specific inquiry and an express assurance.

The builder, Willett, testified that he had face-to-face contact with all of the inspectors, and he relied on the inspectors to "educate" him as to the code requirements. Willett did admit, however, that it was his responsibility to know the code, and he expected the inspectors to point out only what corrections needed to be made to bring the house into compliance. Willett was specifically asked if he recalled making any specific inquiries of the inspectors and testified that he did not. Later in his testimony, Willett stated that the County gave him an express assurance that the house was in compliance with the code when the inspectors approved the plans and the progress of the construction.

County inspector Tillman testified that although he did not recall his specific conversations with the builders, it was his normal practice with an inexperienced builder, which he knew this builder to be, to "tell them this is what you need to do and this is how you need to do it." Tillman could not recall any specific inquiries from the builder, only that the builder told him he was building the house for himself and his wife. Tillman testified that when he wrote an inspection report, he was telling the builder what repairs needed to be made and that the project could continue to the next step. Tillman stated that if he noted a condition not meeting code on an inspection form, and it did not appear in the next inspection form, then he was satisfied that the condition had been corrected.

The question is whether the above facts constitute sufficient evidence for the jury's verdict. In *Taylor*, 111 Wn.2d 159, the Supreme Court discusses a similar factual pattern. The buyers of a building sued Stevens County for negligence in issuing a building permit and negligence in

inspection with regard to a house not built in compliance with the local building code. *Id.* at 163. The Court held that the buyers had failed to establish that the County owed them a specific duty under the special relationship exception. The Court stated that

> [i]ssuance of a building permit does not implicitly imply that the plans submitted are in compliance with all applicable codes. Nor do periodic building code inspections implicitly imply that the construction is in compliance with all applicable codes. Building permits and building code inspections only authorize construction to proceed; they do not guarantee that all provisions of all applicable codes have been complied with.

*Id.* at 167. The Court explained that in order to apply the special relationship exception, the plaintiff must show that "a public official charged with the responsibility to provide accurate information fails to correctly answer a specific inquiry from a plaintiff intended to benefit from the dissemination of the information." *Id.* at 171. This situation would arise, for example, where an official gives the plaintiff inaccurate zoning information in response to a specific inquiry. *See Rogers v. City of Toppenish*, 23 Wn. App. 554, 596 P.2d 1096, *review denied*, 92 Wn.2d 1030 (1979).

█ The evidence, viewed in the light most favorable to the plaintiffs, establishes that the County inspected the building, told the builder which conditions did not meet code, and eventually approved the house, which failed to comply with the building code in several respects. There is no testimony that the contractor asked any specific questions of the inspectors. There is no testimony that the inspectors made any assurances other than approval of the house. Under *Taylor*, the inspection approval is legally insufficient in and of itself to show specific assurances. The special relationship exception requires evidence of the plaintiff's inquiries and the County's specific assurances. *See, e.g., Mull v. City of Bellevue*, 64 Wn. App. 245, 823 P.2d 1152 (1992) (the Court finds no special relationship where builder did not specifically ask what the height

limit was on his property even though the city incorrectly issued a staff report listing the maximum height limit incorrectly); *Rogers*, 23 Wn. App. 554 (the Court finds a special relationship where the buyer contacts the zoning administrator and is erroneously told that the property he wants to purchase is zoned for an apartment building). As a matter of law the evidence submitted was insufficient to satisfy the test for a special relationship.

The buyers/builders argue that even if the special relationship exception does not apply, other exceptions to the public duty doctrine, namely the failure to enforce and legislative intent exceptions, apply to this case. "[A]n appellate court may sustain a trial court on any correct ground, even though that ground was not considered by the trial court." *Nast v. Michels*, 107 Wn.2d 300, 308, 730 P.2d 54 (1986). We address these exceptions.

## B. Failure-to-Enforce Exception

The trial court dismissed all of the buyers' claims against the County in its summary judgment order of December 9, 1994, (Clerk's Papers 151) including the buyers' claim that the failure-to-enforce exception applied. The trial court denied the buyers' motion to reconsider its order as it applied to the failure-to-enforce exception particularly. The buyers assign error to both orders in their cross-appeal. The trial court's order of summary judgment was appropriate.

■ A motion for summary judgment should not be granted unless the pleadings, depositions and affidavits on file show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Hontz v. State*, 105 Wn.2d 302, 311, 714 P.2d 1176 (1986). The appellate court engages in the same inquiry as the trial court, and all evidence and inferences therefrom are considered in the light most favorable to the nonmoving party. *Id.*

■■ The failure-to-enforce exception applies where a

governmental agent has actual knowledge of a statutory violation, but fails to take corrective action despite the statutory duty to do so. *Bailey v. Town of Forks*, 108 Wn.2d 262, 268-69, 737 P.2d 1257 (1987). "When a governmental agent knows of the violation, a duty of care runs to all persons within the protected class, not merely those who have had direct contact with the governmental entity." *Id.* at 269-70. "Liability will not attach unless the governmental agent failed to take care 'commensurate with the risk involved.' " *Id.* at 270 (quoting *Campbell v. City of Bellevue*, 85 Wn.2d 1, 12, 530 P.2d 234 (1975)). "In determining whether a municipality's act or failure to act was unreasonable, the trier of fact can take into account the municipality's available resources and its resource allocation policy." *Id.* at 271. In cases involving the building code, the plaintiff must also show that the code violation constituted "an inherently dangerous and hazardous condition." *Atherton Condominium Apartment-Owners Ass'n v. Blume Dev. Co.*, 115 Wn.2d 506, 531, 799 P.2d 250 (1990). The failure-to-enforce exception is construed narrowly. *Id.*

Here, the critical issue is whether the County inspectors approved the house for habitation with *actual knowledge* that the house was in violation of the building code, such that it created an inherently dangerous and hazardous condition. The buyers presented evidence at trial that the inspectors noted several building code violations in their inspection reports. The inspection reports are not evidence that the inspectors knew the conditions in violation of the code existed at the time the home was completed, but only that they noticed the defects during construction and informed the builder so he could fix them. The inspectors testified that when these defects did not reappear in later reports, they assumed or knew that the defects had been corrected. The buyers rebut the inspectors' assertions with the testimony of experts that any qualified inspector should have known that these defects had not been corrected. This evidence, taken in its most favorable light, shows only constructive knowledge, which is not enough. *See Atherton*, 115 Wn.2d at 532 ("The County cannot be

charged with knowing that the contractor would fail to correct the deficiencies identified by the County in the plans.") (quoting *Zimbelman v. Chaussee Corp.*, 55 Wn. App. 278, 283, 777 P.2d 32 (1989)). "The requirement of actual knowledge does not encompass facts which the building official should have known." *Id.* at 532-33.

The buyers cite *Waite v. Whatcom County*, 54 Wn. App. 682, 686, 775 P.2d 967 (1989) to support their argument that their factual showing was sufficient. In *Waite*, the inspector specifically approved installation of a propane heater in the basement of a house when the code clearly stated that a propane heater may not be installed in a basement. The court held that these facts were sufficient to submit the issue of a failure to enforce to the jury. *Waite* is distinguishable from the facts of this case. The plaintiff in *Waite* demonstrated actual knowledge by presenting evidence that the inspector knew the heater was installed in the basement and knew this was a violation of the code. The buyers here, however, have not shown actual knowledge.

## C. Legislative Intent Exception

The buyers also argue the legislative intent exception applies. The public duty doctrine does not apply where the Legislature enacts legislation specifically for the protection of persons of the plaintiff's class and the plaintiff shows " 'culpable neglect regarding, or indifference to' violations of the building code." *Taylor v. Stevens County*, 111 Wn.2d 159, 165, 759 P.2d 447 (1988) (quoting *Halvorson v. Dahl*, 89 Wn.2d 673, 678, 574 P.2d 1190 (1978)). " '[L]iability can be founded upon a municipal code if that code by its terms evidences a clear intent to identify and protect a particular and circumscribed class of persons.' " *Taylor*, 111 Wn.2d at 164 (quoting *Halvorson*, 89 Wn.2d at 676). In *Taylor*, the Supreme Court stated that "[t]his court and the Court of Appeals have on numerous occasions rejected the contention that building codes impose a duty upon local governments to enforce the pro-

visions of such codes for the benefit of individuals." 111 Wn.2d at 164.

A local building code makes the local authorities liable only where "the code, in its declaration of purpose, evidenced the 'clear intent' to protect building occupants." *Id.* at 165. For example, the *Halvorson* court found that the Seattle Housing Code reflected "clear intent" to protect building occupants because its stated purpose was to identify "conditions and circumstances [that] are dangerous and a menace to the health, safety, morals or welfare of the occupants of such buildings and of the public." 89 Wn.2d at 677 n.1. But, the statement in the State Building Code Act, former RCW 19.27, that the purpose was "to provide building codes throughout the state" and "[t]o promote the health, safety and welfare of the occupants or users of buildings and structures and the general public" was held insufficient to establish a clear intent to protect building occupants. *Taylor*, 111 Wn.2d at 164-66. The current RCW 19.27.020, as amended in 1985, states that "[t]he purpose of this chapter is to promote the health, safety and welfare of the occupants or users of buildings and structures and the general public by the provision of building codes throughout the state." The buyers argue that the change in wording of the purpose of the state building code is sufficient to find a clear intent to protect building occupants.

The buyers cannot point to anything in the legislative history of the 1985 amendment to indicate that the wording change was meant to reflect a clear intent to protect occupants in particular or to impose liability upon governmental entities for these acts. As the Washington Supreme Court noted in *Atherton*, "the public duty doctrine is premised upon the well reasoned policy that 'legislative enactments for the public welfare should not be discouraged by subjecting a governmental entity to unlimited liability.' " 115 Wn.2d at 530 (quoting *Taylor*, 111 Wn.2d at 170). The primary intent of the state building code still is to provide building codes throughout the

state. The change the Legislature made to RCW 19.27 was an attempt to assist cities and counties in the enforcement of the uniform building code. The change was not meant to unleash unlimited liability upon the government. If the Legislature wanted to impose liability upon counties and cities for failure to enforce the uniform building code, it would have plainly spoken. The *Taylor* court's reasoning that it is the duty of the builder, not government, to ensure compliance with building codes is still persuasive: (1) building codes are meant to protect the public safety, not to compensate individuals; (2) to burden government with ensuring compliance may cause budgetary and personnel costs more aptly borne by builders; and (3) imposing liability for noncompliance upon the builder is consistent with the vested rights doctrine. *Atherton,* 115 Wn.2d at 530. There is no legislative intent exception.

Because our holding as to the public duty doctrine is determinative, we do not address the other issues raised.

We reverse.

MORGAN and ARMSTRONG, JJ., concur.

Reconsideration denied May 13, 1997.

Review denied at 133 Wn.2d 1019 (1997).