[No. 24242-7-II.   Division Two.   March 3, 2000.]
DEASHUNDA WILLIAMS, *Appellant*, v. THURSTON COUNTY, *Respondent*.

*Paul H. Meyer* of *Meyer Law Office*, for appellant.

*Edward Holm, Prosecuting Attorney*, and *Jeffrey George Fancher, Deputy*, for respondent.

HUNT, J. — Deashunda Williams appeals from an order granting summary judgment to Thurston County in her claim for negligent inspection against the County. Because Williams failed to show a special relationship exception to the public duty doctrine, we affirm.

## FACTS

The facts are undisputed. In 1994, Deasunda Williams decided to remodel her Olympia residence. She hired Leonard Trabka as a general contractor. Trabka subcontracted the foundation work to Gary and Roy Palm. Trabka was concerned about the work and instructed Williams not to have her mortgage company pay the Palms until the County approved the work. On October 4, 1994, a Thurston County building inspector approved the foundation work. Trabka explained:

> I was concerned that their work had been approved. I called and spoke with the inspector. I asked if the foundation work was built to county standards. I was assured that it had been so constructed. It was only after I had received that assurance that I instructed Ms. Williams that she could pay the Palms and proceed to the next phase of the project.

Trabka then built upon the foundation. After subsequent inspections and approvals, a second inspector raised concerns about the foundation work. And on July 3, 1995, Joseph W. Butler, a Senior Plans Examiner with Thurston

County, found numerous defects in the foundation work and stopped any further remodeling until the defects had been repaired. Butler acknowledged that the first inspector should have discovered the defects and ordered their repair. That inspector was subsequently fired. Williams then sued the County, seeking the difference in costs in repairing the foundation work initially, rather than after the building was constructed upon it.

Thurston County moved for summary judgment, claiming that it was protected by the public duty doctrine. Williams responded, arguing that the interaction between Trabka and the first inspector created a special relationship exception to that doctrine. The trial court granted Thurston County's motion. Williams appeals.

## ANALYSIS

The sole issue on appeal is whether the trial court erred in deciding as a matter of law that no special relationship existed between Thurston County and Williams so as to allow her to pursue her negligence action against the County.

■ In reviewing a summary judgment, we consider the matter de novo and make the same inquiry as the trial court. Summary judgment is appropriate when the pleadings, depositions, and admissions on file, together with the affidavits, if any, show there is no genuine issue about any material fact and, assuming facts most favorable to the nonmoving party, establish that the moving party is entitled to judgment as a matter of law. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

Generally, a local government owes no duty to a claimant for the negligent issuance of a building permit or a negligent inspection to determine compliance with building codes. *Taylor v. Stevens County*, 111 Wn.2d 159, 166, 759 P.2d 447 (1988). Instead, "[t]he duty to ensure compliance rests with individual permit applicants, builders and developers." *Taylor*, 111 Wn.2d at 168. But "[a] duty of care may arise where a public official charged with the

responsibility to provide accurate information fails to correctly answer a specific inquiry from a plaintiff intended to benefit from the dissemination of the information." *Taylor*, 111 Wn.2d at 171. In this narrow instance, a special relationship is created if (1) there is a direct contact between the public official and the injured plaintiff; (2) the public official gives express assurances that there is building code compliance; and (3) the plaintiff justifiably relies on those assurances. *Taylor*, 111 Wn.2d at 171. *See also Moore v. Wayman*, 85 Wn. App. 710, 721, 934 P.2d 707 ("The special relationship exception requires evidence of the plaintiff's inquiries and the County's specific assurances."), *review denied*, 133 Wn.2d 1019 (1997).

Both parties rely on *Rogers v. City of Toppenish*, 23 Wn. App. 554, 596 P.2d 1096, (1979). There the appellate court found that a special relationship existed when a potential purchaser contacted the city zoning administrator to find out if a building he wished to purchase was zoned for apartment houses. He was told that it was, obtained a building permit, and began construction. The City later learned that the property was zoned only for single-family residences and duplexes and rescinded the building permit it had issued the buyer. In finding a special relationship, the court explained:

> It is inherent in the scheme of such community planning that an individual who desires to purchase a piece of property for a particular purpose would inquire of the city officials as to its zoning classification. The most logical inquiry would be to the zoning administrator; thus, the purchaser can determine whether his purpose for purchasing the property is consistent with the city's comprehensive plan. Such an inquiry imposes upon the zoning administrator the duty to answer accurately; there is nothing discretionary about the duty.
>
> . . . For Mr. Rogers to have searched the city files to the extent that the city manager did would have been an extreme, if not impossible burden. . . . *The current zoning classification was solely within the knowledge of the zoning administrator.*

*Rogers*, 23 Wn. App. at 560 (emphasis added).

In *Moore*, 85 Wn. App. 710, we found that no special relationship existed, even though the building inspector had explained what the inexperienced builder needed to do in order to comply with the building code. We noted:

The builder, Willett, testified that he had face-to-face contact with all of the inspectors, and he relied on the inspectors to "educate" him as to the code requirements. Willett did admit, however, that it was his responsibility to know the code, and he only expected the inspectors to point out what corrections needed to be made to bring the house into compliance. Willett was specifically asked if he recalled making any specific inquiries of the inspectors and testified that he did not. Later in his testimony, Willett stated that the County gave him an express assurance that the house was in compliance with the code when the inspectors approved the plans and the progress of the construction.

County inspector Tillman testified that although he did not recall his specific conversations with the builders, it was his normal practice with an inexperienced builder, which he knew this builder to be, to "tell them this is what you need to do and this is how you need to do it." Tillman could not recall any specific inquiries from the builder, only that the builder told him he was building the house for himself and his wife. Tillman testified that when he wrote an inspection report, he was telling the builder what repairs needed to be made and that the project could continue to the next step. Tillman stated that if he noted a condition not meeting code on an inspection form, and it did not appear in the next inspection form, then he was satisfied that the condition had been corrected.

*Moore*, 85 Wn. App. at 720. In finding no special relationship existed, we noted:

The evidence, viewed in the light most favorable to the plaintiffs, establishes that the County inspected the building, told the builder which conditions did not meet code, and eventually approved the house, which failed to comply with the building code in several respects. There is no testimony that the contractor asked any specific questions of the inspectors. There is no testimony that the inspectors made any assurances other than approval of the house.

*Moore*, 85 Wn. App. at 721.

In *Mull v. Bellevue*, 64 Wn. App. 245, 823 P.2d 1152 (1992), Division One of this court found that no special relationship existed where a builder did not specifically ask what the height limit was on his property, even though the city issued a staff report listing the maximum height limit incorrectly. *Mull* gives examples of specific inquiries and express assurances, that could give rise to a special relationship, such as "situations where the information requested does not appear in the code, the answer is unclear, or the applicant seeks affirmation of his or her interpretation of the code[.]" 64 Wn. App. at 256 n.4.

Here, considering Trabka's affidavit in a light most favorable to Williams, as we must, she does not show that Trabka made any specific inquiries of the county inspector or that the inspector gave any express assurances. The inspector did not relay particular information known only to him, as in *Rogers*. The inspector did little more than make a general approval, as in *Moore* and *Taylor*. Rather, as in *Mull*, Trabka's inquiry and the County's response were general, not specific. As the *Taylor* court noted: "Building permits and building code inspections only authorize construction to proceed; they do not guarantee that all provisions of all applicable codes have been complied with." *Taylor*, 111 Wn.2d at 167.

We affirm.

ARMSTRONG, A.C.J., and SEINFELD, J., concur.