[No. 24413-2-I.   Division One.   September 17, 1990.]

BARBARA A. GARNETT, *Respondent,* v. THE CITY
OF BELLEVUE, ET AL, *Appellants.*

*Richard L. Andrews, City Attorney,* and *Lori Molander,
Assistant,* for appellants.

*Anthony Butler,* for respondent.

SWANSON, J.—The defendants, the City of Bellevue and
two of its police officers, Edward Mott and Gene Ladke,
appeal from the judgment entered on the jury verdict

awarding plaintiff Barbara Garnett $15,000 damages for negligent infliction of emotional distress. The defendants challenge the trial court's denial of their motion to dismiss Garnett's claim of negligent infliction of emotional distress, the trial court's denial of their motion for judgment notwithstanding the verdict or for new trial, the addition of Mott and Ladke as parties, the admission of certain deposition testimony, and the exclusion of evidence of the felony convictions of a witness.

This action arises out of an incident that occurred on August 2, 1983, at approximately 12:30 a.m. at the Greenwood Inn in the City of Bellevue. The incident involved two Bellevue City Police officers, Edward Mott and Gene Ladke, and two women, Barbara Garnett and Elizabeth LeBron. Following the incident, Garnett and LeBron filed this action against the City of Bellevue and two unidentified Bellevue City Police officers, designated as John Doe I and John Doe II. The action, filed December 9, 1983, alleged civil rights violations, invasion of privacy, infliction of emotional distress, the tort of outrage, "and other tortious conduct."

The trial court dismissed on summary judgment Elizabeth LeBron as a party and dismissed all of Garnett's claims except those for racial discrimination under 42 U.S.C. § 1981, outrage, negligent and intentional infliction of emotional distress, and false imprisonment. Further, the court substituted Officers Mott and Ladke for John Does I and II because they had been participating throughout the proceedings through their attorney.

Testimony at trial regarding the August 2, 1983, incident established two versions of the event. According to the defendants, police officers Mott and Ladke went to the Greenwood Inn after receiving a radio dispatch that two women in the lounge were soliciting customers and refused to leave. After Mott and Ladke arrived at the Greenwood Inn, the lounge manager informed them that she had observed two women in the lounge over the past few hours who would each dance with a man and, on a regular basis,

one of the women would leave and the man would soon follow. Approximately 20 to 30 minutes later, the woman would return alone. The lounge manager also told Mott and Ladke that a male customer had complained that he had been "hit on" by one of the women. The manager then requested Mott and Ladke to ask the women to leave because they did not leave when she asked them. According to Mott and Ladke, after the manager identified Garnett and LeBron as the two women, they approached the two women and asked them to step outside the bar to a more convenient area to talk. The women complied and the officers "separated them to make sure we had some place to talk and make sure we got the stories straight." According to Mott, he asked Garnett for I.D. and when she finally gave him one piece of I.D. it did not have a picture, so he asked her for a photo I.D. Garnett then became very angry. At this point, Mott informed Garnett that the Greenwood management was accusing her of engaging in prostitution, and Garnett became enraged. The officers then informed both women that management had requested they leave. Mott indicated that he told the women that he had no proof one way or the other that they were engaging in prostitution but that "if it was me, I wouldn't be spending my money in a place that was accusing me [of prostitution]. I would go down to Misty's."

According to Garnett, however, Mott ordered her and LeBron out of the bar and into the lounge. Garnett testified that when she questioned this order Mott responded, "shut the hell up. . . . You walk. . . . Just walk. . . . You heard what the hell I said. I said move, walk. And if you say another damned word, I'm going to take you downtown now." Garnett testified that she started crying and Mott told her, "I want to see your I.D. and I want to see it now." When she showed her I.D. to Mott, he then demanded, "In fact, let me see every piece of I.D. you have." Mott then ordered her to dump out the contents of her pocketbook. When Garnett asked Mott why he was doing this, he told

her, "You know what you did and you know what you are."
According to Garnett, Mott looked at her I.D. and said,

> I want you out of the city of Bellevue. You get out of town. We
> don't want your kind in here, in this establishment, and we
> don't want your kind in the city of Bellevue.

Garnett testified that Mott went on to say, "you know what
you are. You're a prostitute, a hooker." At this point
according to Garnett, she "really started crying". Garnett
then testified that Mott told her, "I better never as long as
I live see you anywhere in the city of Bellevue, in any place,
on any street, at any time anywhere. And if I see you in any
place, I am going to pick you up and take you downtown
because we don't want your kind here."

After presentation of the evidence, the defendants moved
to strike the claim for negligent infliction of emotional dis-
tress (essentially a motion for directed verdict). The basis
of the motion was that no duty was owed to Garnett as an
individual and, therefore, under the public duty doctrine,
the defendants could not be liable for breaching a duty
owed to the general public. The trial court denied the
motion, holding that the "special relationship" exception to
the doctrine was present under the facts of the case, thus
establishing a duty owed to Garnett as an individual rather
than to a nebulous public.

Following deliberations, the jury returned a defense ver-
dict on the claims of racial discrimination, false arrest, and
intentional infliction of emotional distress but found for
Garnett on her claim of negligent infliction of emotional
distress and awarded her $15,000.

Following entry of judgment on the verdict the defend-
ants moved for judgment notwithstanding the verdict or in
the alternative for new trial. The defendants argued that
there was not sufficient evidence to support the jury finding
of negligence and that they were shielded by the public
duty doctrine. The trial court denied the motion and said

> that this case, although it doesn't fit under any of the four
> [exceptions to the public duty doctrine], presents a situation in
> which the doctrine should not be applied. . . . I suppose one

could term it as a fifth exception, or a variation on the special relationship exception.

This appeal timely followed.

The first issue on appeal is whether the trial court erred in denying the defendants' motion to dismiss the claim of negligent infliction of emotional distress, motion for judgment notwithstanding the verdict, and motion for new trial. The defendants contend that these motions should have been granted because they are not liable as a matter of law and rely for that contention upon the public duty doctrine.

■■■ Sovereign immunity for municipal corporations was abolished by the Legislature in 1967. *Meaney v. Dodd,* 111 Wn.2d 174, 178, 759 P.2d 455 (1988). By adopting RCW 4.96.010, the Legislature declared that municipal corporations "shall be liable for damages arising out of their tortious conduct, or the tortious conduct of their officers . . . to the same extent as if they were a private person or corporation". However, RCW 4.96.010 does not create any new causes of action, imposes no new duties, and brings into being no new liability; it merely removes the defense of sovereign immunity. *J&B Dev. Co. v. King Cy.,* 100 Wn.2d 299, 304, 669 P.2d 468 (1983), *overruled on other grounds in Honcoop v. State,* 111 Wn.2d 182, 759 P.2d 1188 (1988). The intent of RCW 4.96.010 was to permit a cause of action in tort *if a duty could be established,* just the same as with a private person. *J&B Dev. Co.,* 100 Wn.2d at 305. In sum, one must first establish the existence of a duty and then apply RCW 4.96.010 to insure that, having established the duty, claimants may proceed in tort against municipalities to the same extent as if the municipality were a private person. *J&B Dev. Co.,* 100 Wn.2d at 305–06. To sustain an action against an individual, it is necessary to determine whether one is under a duty to a claimant as opposed to the general public. *J&B Dev. Co.,* 100 Wn.2d at 304. Likewise, to sustain an action against a municipality it is necessary to decide whether a municipality is under a general duty to a nebulous public or whether that duty has focused on the claimant. *J&B Dev. Co.,* 100 Wn.2d at 304.

The public duty doctrine recognizes that a fundamental element of *any* negligence action is a duty owed by the defendant to the plaintiff. *Meaney,* 111 Wn.2d at 178. Thus, to recover from a municipal corporation in tort it must be shown that the duty breached was owed to the injured person as an individual and was not merely the breach of a duty owed to the general public (because a duty to all is a duty to no one). *Meaney,* 111 Wn.2d at 178. The concept of the public duty doctrine, therefore, is that a duty is owed to the public at large unless it can be established that the duty is owed to a particular individual.

As we have frequently said, "[t]he public duty doctrine determines the scope of duty involved where public services are provided." *Haberman v. WPPSS,* 109 Wn.2d 107, 158, 744 P.2d 1032, 750 P.2d 254 (1987), *appeal dismissed,* 488 U.S. 805 (1988). In *Haberman,* the contention was made that the Supply System used fraudulent statements to sell bonds. The court said such actions were not discretionary or policy decisions and were, therefore, actionable. However, the court concluded that the allegations of fraud did not arise out of a service to the general public. Because the Supply System's alleged fraudulent action was not a general public duty, the court concluded that the public duty doctrine was inapplicable to the case. Similarly here the police officers were responding to a complaint by the hotel management. The infliction of emotional distress was the result of direct contact with the plaintiff, not the performance of a general public duty. The jury found a breach of a duty not to negligently inflict emotional distress and that such duty was owed specifically to the plaintiff. This is not a case where the hotel manager who requested police assistance, *i.e.,* governmental service, is complaining about nonfeasance or malfeasance in the performance of such service. The general rule is that,

a public officer is answerable to private persons who sustain special damage resulting from the negligent performance of the officer's imperative or ministerial duties, unless the wrong done is a violation of a duty which he owes solely to the public.

5 S. Speiser, *The American Law of Torts* § 17:65, at 453 (1988); *but see Kelso v. Tacoma*, 63 Wn.2d 913, 390 P.2d 2 (1964).

We hold that the public duty doctrine is inapplicable to the facts of this case and, therefore, cannot be used to prevent liability in this situation. Appellants have failed to cite us to any case or other authority applying the public duty doctrine to a factual situation similar to the facts here. Further, at trial, the appellants did not submit any proposed instructions regarding the public duty doctrine and on appeal have failed to assign error to any instructions given. Accordingly, we do not accept appellants' claim that the public duty doctrine prohibits liability under the facts of this case.

We affirm.

The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions.

GROSSE, A.C.J., and WINSOR, J., concur.

Reconsideration denied January 15, 1991.

Review denied at 116 Wn.2d 1028 (1991).