[No. 22810-6-II. Division Two. April 9, 1999.]

LESTER E. WOLFE, ET AL., *Plaintiffs*, v. BENNETT PS&E, INC., *Respondent*, PIERCE COUNTY, *Appellant*.

*John W. Ladenburg, Prosecuting Attorney,* and *Daniel Ray Hamilton, Deputy,* for appellant.

*Brian Thomas Comfort* of *Comfort Davies & Comfort, P.S.,* for plaintiffs.

*Rhys Alden Sterling*, for respondents.

HUNT, J. — Pierce County appeals denial of its summary judgment motion, in which it sought dismissal as a third party defendant in a lawsuit brought by property owners Lester and Marilyn Wolfe against Bennett PS&E, Inc. for negligence in processing their short plat application. The County argues: (1) it is immune from this negligence suit under the public duty doctrine; (2) Bennett's failure to exhaust other remedies precludes its impleading the County; and (3) the County was not the proximate cause of Bennett's damages. We agree and reverse.

## FACTS

Lester and Marilyn Wolfe owned 3.76 acres of land in Graham, Washington, that they sought to subdivide into three lots. They hired Bennett PS&E Inc. (Bennett), a survey and engineering firm, to shepherd them through Pierce County's short plat application process. Acting as the Wolfes' agent, Bennett submitted their short plat application to the County on November 25, 1992. They received an application receipt from the County dated November 25, 1992, which said that the application would expire after 210 days "if not resubmitted in final form" or if they did not seek and obtain an extension.[1]

---

[1]The County's Department of Planning and Land Services (PALS) can place an application on hold until PALS completes an environmental review. Such a hold tolls the application's normal 210-day time period. When PALS renders its environmental determination, the remainder of the 210-day period begins to run.

On December 23, 1992, the Pierce County Health Department disapproved the Wolfes' application because the property's soil depth would not support on-site sewage disposal. On December 24, 1992, Pierce County Planning and Land Services Department (PALS) sent the Wolfes a letter stating that: (1) the County was returning the application for cause; (2) it was the Wolfes' responsibility to coordinate the review and revision process with Bennett; and (3) the revised final application should be submitted within 210 days of the original application. By letter, PALS informed Bennett and the Wolfes that they must respond within 180 days and that it was the owners' responsibility to coordinate review and revision with the surveyor. Mr. Wolfe told Bennett that he would personally "take care of" the disapproval from the Health Department.

On January 20, 1993, after reviewing the environmental checklist, PALS placed a hold on the Wolfes' application because seismic and wetland concerns warranted an environmental assessment. This hold tolled the Wolfes' 210-day application period after the first 56 days, such that when the hold was lifted, there would be 154 days remaining before the application expired.

On March 12, 1993, a Bennett employee went to the PALS office and obtained a computer printout of the Wolfes' application status. This printout included the following notation: "PSPA HD ON HOLD." Bennett thought this meant that the application had been placed on hold by the Health Department. The County asserts that this was internal shorthand for the hold placed by PALS because of the wetland assessment, independent of the Health Department review.[2]

The Wolfes presented the County with a wetland assess-

---

The County informed Bennett of this policy by letter, which further noted that only PALS could institute such an environmental hold.

[2]At oral argument, the County explained that it is possible for an application to expire after 210 days, even though the Health Department has not completed its review. The procedure in those cases is for the applicant to seek an extension from PALS. PALS does not track the running of application periods for applicants, nor does it have the resources to do so.

ment on October 5, 1993. On November 16, 1993, PALS determined that there were no regulated wetlands on the property, and on November 30, 1993, it issued a Determination of Nonsignificance (DNS). The DNS stated that it did not constitute project approval and that the applicant must still comply with all applicable county and state requirements.

The County policy, transmitted to Bennett by letter shortly after the initial application, provided that the original 210-day application time period would begin to run once PALS issued an environmental decision. PALS released its hold on December 2, 1993. At this point the Wolfes had 154 days remaining to submit their final application, i.e. by May 5, 1994. But the County noted in its computer system that the new expiration date was November 21, 1994. When Bennett received the DNS, it knew that the PALS hold had been lifted, but it assumed that the Health Department "hold" would extend the tolling of the 210-day period. Bennett did not check with PALS to test the accuracy of its assumption.

On June 6, 1994, Bennett filed an application for site development with the County. On September 23, 1994, the County issued a site development permit, which expressly stated that: (1) issuance of the permit "does not imply or signify that the proposed work complies with the requirements of or is allowed by other County ordinances"; and (2) the applicant agrees to accept sole responsibility for compliance with all regulatory requirements.

The County treated the Wolfes' short plat and site development applications and permits as two different actions: "A site development permit can be totally unrelated to a short plat application and the official responsible for processing the one usually does not have as part of his or her duties the monitoring of the other." Consistent with this general practice, the Wolfes' site development permit and the short plat application bore different numbers.

On September 6, 1994, Bennett received a letter from PALS, indicating that the site development plans were ac-

ceptable. On October 26, 1994, the Health Department approved the septic system for the Wolfes' short plat application. On January 27, 1995, Bennett received another letter from a County site development official, noting that PALS had received the letter of certification for the storm drainage system. In early February 1995, Bennett presented the final short plat application to PALS, which informed Bennett that the application had expired on November 21, 1994.

During the application process, the County's zoning laws had changed such that the Wolfes' property could no longer be short platted. Nor could they proceed under their prerezone application, which had expired. Bennett took no action to contest or to appeal the application's expiration.

Nine months later, on November 12, 1996, the Wolfes sued Bennett in Pierce County Superior Court, claiming breach of contract and negligence in that Bennett's failure to process their application in a timely manner had diminished their property value. Bennett answered on December 17, 1996, and impleaded Pierce County as a third party defendant. Bennett claimed that the County had a duty to notify Bennett that the Wolfes' application was about to expire and, therefore, should indemnify Bennett in the Wolfes' lawsuit.

The County moved for summary judgment, asserting: (1) The public duty doctrine precludes negligence suits of this type; (2) the special relationship exception to the public duty doctrine does not apply; (3) the County did not cause Bennett's failure to submit a timely final application; and (4) Bennett failed to exhaust administrative and judicial remedies. The trial court denied summary judgment. We granted discretionary review to the County under RAP 2.3(b).

## DISCUSSION
### I. STANDARD OF REVIEW

■ When reviewing an order of summary judgment, we conduct the same inquiry as the trial court. *Wilson v. Stein-*

*bach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). Summary judgment is proper if pleadings, depositions, affidavits, and admissions, viewed in a light most favorable to the non-moving party, show that there is no genuine issue of material fact and the party is entitled to judgment as a matter of law. *Wilson*, 98 Wn.2d at 437.

## II. Public Duty Doctrine

██ To implead the County as a third party defendant under a negligence theory, Bennett must be able to prove that (1) the County owed Bennett a duty, (2) the County breached that duty, (3) Bennett suffered damages, and (4) that breach of the duty was the proximate cause of these damages. *Alger v. Mukilteo*, 107 Wn.2d 541, 545, 730 P.2d 1333 (1987).

Bennett relies upon two distinct arguments to establish public duty: first, that the County had a constitutional duty to notify Bennett that the Wolfes' application was about to expire; and second, that the County created a special relationship under the public duty doctrine, which spawned a duty to notify Bennett when the short plat application expired. Holding that the County owed no special duty to Bennett, we reject Bennett's public duty doctrine analysis.[3]

### No Special Relationship

 Under the public duty doctrine of negligence law, a public entity must owe a duty to the plaintiff as an individual, rather than to the public in general. *Taylor v. Stevens County*, 111 Wn.2d 159, 163, 759 P.2d 447 (1988); *Chambers-Castanes v. King County*, 100 Wn.2d 275, 284, 669 P.2d 451, 39 A.L.R.4th 671 (1983); 18 Eugene McQuillin, Municipal Corporations § 53.04 (3d ed. 1984). Bennett argues that the County had a duty to give notice that the Wolfes' short plat application was about to expire. If the

---

[3]We do not address Bennett's constitutional arguments because we reverse the trial court on other mutually independent grounds.

County's land use regulatory framework exists to benefit the general public, then Bennett cannot claim that the duty is owed to Bennett as an individual.

Governments enact building codes, zoning ordinances, and other land use regulations to protect the health and welfare of the general public. *Taylor*, 111 Wn.2d at 169. Land development applications expire when the applicant fails to comply with the regulatory framework because the competing public policy discourages "permit speculation."[4] Bennett cannot show that the County owes an individual duty under this regulatory framework.

■ Nor can Bennett establish the "special relationship" exception to the public duty doctrine. To establish a special relationship, Bennett must be able to show that: (1) there is direct contact between the County and Bennett that sets Bennett apart from the general public; (2) Bennett specifically inquired and the County expressly assured that it would give notice of the application period's expiration; and (3) Bennett justifiably relied upon any such representations by the County. *Moore v. Wayman*, 85 Wn. App. 710, 718, 934 P.2d 707 (1997) (citing *Taylor*, 111 Wn.2d at 171). But Bennett cannot meet this burden.

■ Bennett first asserts that because the County gave notice of the hold on the application, the County should also have given notice when the County removed the hold. The first "express" notification upon which Bennett relies was a telephone call, in which an unidentified County employee apparently told a Bennett employee that the Wolfes' application was on hold. The only evidence of this communication that Bennett presented to the trial court was inadmissible hearsay—the deposition of Tamara Bennett, who had heard someone else tell a third party that this

---

[4]Vested rights contravene the public interest by condoning nonconforming uses; yet private property owners are entitled to some certainty in land use policy. Time constraints ensure an applicant's good faith efforts in completing land use projects, thereby discouraging "permit speculation." *Noble Manor Co. v. Pierce County*, 133 Wn.2d 269, 280, 943 P.2d 1378 (1997); *Erickson & Assocs. v. McLerran*, 123 Wn.2d 864, 872 P.2d 1090 (1994); *Hull v. Hunt*, 53 Wn.2d 125, 130, 331 P.2d 856 (1958).

conversation took place. Such incompetent evidence cannot support a summary judgment decision. *Young v. Key Pharms., Inc.*, 112 Wn.2d 216, 224-25, 770 P.2d 182 (1989); *Barrie v. Hosts of Am., Inc.*, 94 Wn.2d 640, 644, 618 P.2d 96 (1980); *Ames v. City of Fircrest*, 71 Wn. App. 284, 290, 857 P.2d 1083 (1993).

Bennett next asserts that it received express notification[5] of the County's hold from a computer printout that a Bennett employee obtained from the County. Apparently, Bennett misread the cryptic printout, assumed that "HD" on the print-out meant "Health Department," concluded that the Health Department had placed a "hold" on the application in addition to the PALS hold, and assumed that the application period would begin to run again following Health Department approval. Bennett cannot construct from this tenuous evidence an express assurance that the County would notify Bennett when holds were released or when the application deadline changed.

Bennett further claims that the application was subject to a second hold by the Health Department because the County's policy was to treat Health Department soil investigations as an environmental review. But the Health Department notice merely shows that the application was disapproved because of substandard soil depth. The County asserts that only PALS can place holds on land use applications and that if the separate Health Department permits are taking too long, the applicant must ask PALS for an extension of time. That Bennett mistakenly assumed a second hold was in place does not create liability for the County. Bennett could have contacted the County at any time to determine the status of the application, but it did not.

Even if the County did expressly notify Bennett that the application was on hold, there is no competent evidence

---

[5]Bennett also relies on two other computer printouts; but those documents were dated May 3, 1996, and, as such, are not competent evidence to support Bennett's assertion that the County expressly notified Bennett before the application expired on November 21, 1994.

that the County expressly told Bennett that the County would notify Bennett when holds were removed. Such an expectation on Bennett's part directly conflicts with the County's earlier notices that it was the applicant's responsibility to calculate time periods and to seek extensions if needed. Thus, viewed in the light most favorable to Bennett, the evidence does not demonstrate that a County official, charged with the responsibility of providing accurate information, made any express assurances to Bennett that would establish a special relationship to circumvent the public duty doctrine. *Wayman*, 85 Wn. App. at 721.

## EQUITABLE ESTOPPEL

■■ Bennett argues that the County should be equitably estopped from asserting the public duty doctrine as a defense. Equitable estoppel requires a party to prove by clear, cogent, and convincing evidence that a statement or act, inconsistent with a later claim, induced the party justifiably to rely on the statement to the party's detriment. *Colonial Imports, Inc. v. Carlton N.W., Inc.*, 121 Wn.2d 726, 734, 853 P.2d 913 (1993). Equitable estoppel is not a favored doctrine when applied to allow municipal liability. *Chemical Bank v. Washington Pub. Power Supply Sys.*, 102 Wn.2d 874, 905, 691 P.2d 524 (1984); *Public Util. Dist. No. 1 v. Cooper*, 69 Wn.2d 909, 918, 421 P.2d 1002 (1966).

Here, Bennett cannot show that the County made a statement upon which Bennett justifiably relied. As noted above, the telephone communication is not competent evidence. The computer printout does not demonstrate clearly and cogently that the County made any express statements to Bennett. " 'Estoppels must be certain to every intent, and are not to be taken as sustained by mere argument or doubtful inference.' " *Cooper*, 69 Wn.2d at 918 (quoting *Stouffer-Bowman, Inc. v. Webber*, 18 Wn.2d 416, 428, 139 P.2d 717 (1943)). Finally, information that is easily obtained by the party asserting estoppel does not satisfy the requirements of equitable estoppel. *Chemical Bank*, 102 Wn.2d at

905. Bennett had only to call the County to obtain the same information that it claims established estoppel. Thus, this argument also fails.[6]

### III. Proximate Cause and Exhaustion of Remedies

"Legal causation rests on policy considerations determining how far the consequences of a defendant's acts should extend."[7] *City of Seattle v. Blume*, 134 Wn.2d 243, 252, 947 P.2d 223 (1997).

> "[Legal liability] is always to be determined on the facts of each case upon mixed considerations of logic, common sense, justice, policy, and precedent. . . . The best use that can be made of the authorities on proximate cause is merely to furnish illustrations of situations which judicious men upon careful consideration have adjudged to be on one side of the line or the other."

*McCoy v. American Suzuki Motor Corp.*, 136 Wn.2d 350, 359-60, 961 P.2d 952 (1998) (quoting *King v. City of Seattle*, 84 Wn.2d 239, 250, 525 P.2d 228 (1974) (quoting 1 Thomas Atkins Street, The Foundations of Legal Liability 110 (1906))).

The proximate cause issue here is Bennett's failure to exhaust available remedies: It did not appeal the Wolfes' adverse land use decision.[8] The County asserts that Ben-

---

[6]Bennett also argues that there is another exception to the public duty doctrine based on egregious government conduct under *Garnett v. City of Bellevue*, 59 Wn. App. 281, 796 P.2d 782 (1990). But in *Garnett*, the public duty doctrine did not apply because the defendants owed a duty to plaintiffs as individuals, not as a duty to the general public. *Id.* at 286-87. Thus, such an exception to the public duty doctrine has not been carved out in Washington law. Furthermore, the County's conduct here does not rise to the "egregious" conduct in *Garnett*, where police officers verbally abused a citizen during an investigation. *Id.* at 283-84.

[7]The exhaustion of remedies in a tort action is really a question of proximate cause; courts "must decide based on traditional principles of proximate causation whether or not a defendant was the cause of the injuries suffered and whether the duty to mitigate was met." *Blume*, 134 Wn.2d at 260.

[8]The Pierce County Code provided at the time that an appeal of a short plat decision must be commenced within 14 days of such decision. Further, a writ of review by superior court of this decision was available if filed within 30 days of the decision. RCW 58.17.180 (1995). We note that the Land Use Petition Act

nett did not seek administrative or judicial review when it first learned the short plat application had expired. Bennett argues that appeal would have been futile and that the appeal deadlines had passed.[9] Because Bennett is unable to establish a duty owed by the County, the issue of causation is moot, and the trial court cannot be affirmed on this ground.

Moreover, the County is arguably not the cause of the Wolfes' injuries. The County argues that there is no evidence demonstrating that lack of official notice concerning removal of any holds caused Bennett to miss the final application deadline. In addition, because the County had no duty to notify Bennett, it was actually Bennett's own erroneous assumptions and failures to confirm deadlines and to comply with the regulatory framework that caused the application's rejection. Even so, Bennett might have been able to reverse the damage had it filed a timely appeal, but it did not.[10]

We reverse the trial court's denial of the County's mo-

(RCW 36.70C) was not in effect when the County notified Bennett that its application had expired.

[9]Generally, appeal deadlines run from the issuance of an order or opinion. But here, the County issued no order; rather expiration of the short plat occurred, not by County action, but by Bennett's inaction—failure to comply with the regulatory framework in a timely manner. Once Bennett was notified that the application had been denied, it could have appealed that determination.

[10]In *Blume*, the court noted that application of the independent judgment rule (failure to exhaust remedies bars tort action) could chill mitigation and settlement, in contravention of state policy promoting settlement. *Blume* 134 Wn.2d at 258. Thus, withdrawal from litigation and forgoing further judicial proceedings may be viewed as valid mitigation measures or attempts at settlement. But this policy concern for rejecting the independent judgment rule is not present here because Bennett did not choose to forgo appeal in favor of settlement or to mitigate potential damages. On the contrary, Bennett did not even engage the County in a lawsuit until after the Wolfes sued Bennett.

"As a matter of policy, the foreseeability of intervening causes may also sever liability. 'An intervening cause [or "superseding" cause in the Restatement] is one which comes into active operation in producing the result after the negligence of the defendant.' " *Bullard v. Bailey*, 91 Wn. App. 750, 758, 959 P.2d 1122 (1998), citing WILLIAM L. PROSSER, TORTS 270-71 (4th ed.1971). Thus, even if the County were subject to a cause of action for negligence here, Bennett's failure to exhaust its legal remedies could be characterized as an intervening act that broke the proximate chain of causation under the independent judgment rule. Bennett's injury resulted not only from its failure timely to process the Wolfes' short plat application, but also from its failure to appeal the application's denial.

tion for summary judgment and remand for entry of summary judgment in favor of the County.

BRIDGEWATER, C.J., and HOUGHTON, J., concur.

Reconsideration denied May 6, 1999.

Review denied at 139 Wn.2d 1003 (1999).