Shannon O'BRIEN, a single woman,
Plaintiff–Appellant,

v.

CITY OF TACOMA, a municipal
corporation; et al., Defendants–
Appellees.

Shannon O'Brien, a single woman,
Plaintiff–Appellant,

v.

City of Tacoma, a municipal cor-
poration; et al., Defendants–
Appellees.

Nos. 05–35917, 05–36069.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 9, 2007.

Filed Aug. 14, 2007.

Michael E. Withey, Esq., Stritmatter Kessler Whelan Withey Coluccio, Seattle, WA, for Plaintiff–Appellant.

Jean P. Homan, Esq., Tacoma City Attorney's Office, Tacoma, WA, for Defendants–Appellees.

Before: ALARCÓN, HAWKINS, and WARDLAW, Circuit Judges.

---

\* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

1. The district court also granted summary judgment in favor of the City and the officers

MEMORANDUM \*

Shannon O'Brien appeals from the order granting summary judgment in favor of the City of Tacoma ("City") and Tacoma Police Department ("TPD") officers Michael Torres and David Fischer on her claims that the officers arrested her without probable cause for prescription fraud in violation of 42 U.S.C. § 1983, and negligently failed to investigate allegations that she was attempting to fill a fraudulent prescription.[1] We have jurisdiction under 28 U.S.C. § 1291. We affirm.

**I**

■ We reject Ms. O'Brien's contention that the district court erred in granting summary judgment in favor of Officers Torres and Fischer on the basis of qualified immunity. In evaluating an officer's claim to qualified immunity, we must first determine "whether, '[t]aken in the light most favorable to the party asserting the injury, [ ] the facts alleged show the officer's conduct violated a constitutional right.'" *Davis v. City of Las Vegas,* 478 F.3d 1048, 1053 (9th Cir.2007) (quoting *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)) (alterations in original). "'This must be the initial inquiry.'" *Scott v. Harris,* —— U.S. ——, 127 S.Ct. 1769, 1774, 167 L.Ed.2d 686 (2007) (quoting *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151). Here, a genuine issue of material fact exists as to what information the officers possessed when they arrested Ms. O'Brien. Pharmacist Chad Randall testified in his deposition that he told Officer Darland that he had called to verify the genuineness of Ms. O'Brien's prescription but had not spoken to Dr. Spence,

on Ms. O'Brien's claim for false arrest. She does not, however, appeal from the grant of summary judgment as to that claim.

who issued the prescription. The officers presented contrary evidence that Mr. Randall did tell Officer Darland he had spoken to Dr. Spence and that Dr. Spence said the prescription was forged. Assuming the truth of Mr. Randall's version of events, and construing the facts in the light most favorable to Ms. O'Brien, the facts would establish that the officers' conduct violated Ms. O'Brien's constitutional right not to be subjected to a warrantless arrest without probable cause.

That conclusion does not, however, end our inquiry. "If, and only if, the court finds a violation of a constitutional right, 'the next, sequential step is to ask whether the right was clearly established ... in light of the specific context of the case.'" *Scott,* 127 S.Ct. at 1774, 127 S.Ct. 1769 (quoting *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151). "'[E]ven absent probable cause, qualified immunity is available if a reasonable police officer could have believed that his or her conduct was lawful, in light of the clearly established law and the information the [arresting] officers possessed.'" *Blankenhorn v. City of Orange,* 485 F.3d 463, 476 (9th Cir.2007) (quoting *Peng v. Mei Chin Penghu,* 335 F.3d 970, 980 (9th Cir.2003)).

Here, Mr. Randall told the TPD officer to whom he spoke during the 911 call that he "had a prescription that the doctor said they didn't write." The TPD also obtained a copy of Ms. O'Brien's prescription, on which Mr. Randall had written "Forged? ? different ink and handwriting." Although there is some dispute about whether Mr. Randall told the officers that *Dr. Spence* had denied writing the prescription, there is no dispute that Mr. Randall told the officers that the *doctor's office* had denied writing the prescription. When the officers arrived at the pharmacy the next day, a pharmacist pointed to Ms. O'Brien and told the officers she was the person Mr.

Randall had described. The officers then arrested her. No clearly established law would have informed the officers that the information they possessed did not constitute probable cause. Reasonable officers could have believed the arrest was lawful, and the officers are therefore entitled to qualified immunity.

**II**

■ We also reject Ms. O'Brien's challenge to the district court's conclusion that she failed to demonstrate that the City had a custom or policy that made it liable under § 1983. Ms. O'Brien argues that the policy was the City's evidence-storage system.

A plaintiff asserting a § 1983 claim based on a municipal custom or policy must show that the custom or policy was the "'moving force' behind the constitutional violation he [or she] suffered." *Galen v. County of Los Angeles,* 477 F.3d 652, 667 (9th Cir.2007). Here, the City's evidence-storage system did not make Mr. Randall's note unavailable to Officers Torres and Fisher because the officers could have obtained the note by traveling to the storage site, or simply examining the photocopy of the prescription attached to Officer Darland's report. It was the officers' individual actions, rather than the evidence-storage system itself, that was the "moving force" underlying this aspect of Ms. O'Brien's complaint.

**III**

■ With respect to Ms. O'Brien's state law negligence claim, that claim is properly construed as one for negligent investigation. *See* Complaint ¶ 5.2 ("The arresting officers ... negligently and with reckless indifference to the plaintiff's rights, failed to adequately investigate the allegation in numerous ways ...") In Washington, "[a] claim of negligent investigation will not lie against police officers." *Laymon v. Wash-*

*ington State Dept. of Natural Resources,* 99 Wash.App. 518, 994 P.2d 232, 239 (2000) (citing, *inter alia, Fondren v. Klickitat County,* 79 Wash.App. 850, 905 P.2d 928 (1995)). Thus, the district court properly granted summary judgment in favor of the officers on Ms. O'Brien's negligent investigation claim.

## IV

Summary judgment also was properly granted on Ms. O'Brien's negligence claim in favor of the City. Washington's public duty doctrine " 'provid[es] generally that for one to recover from a municipal corporation in tort it must be shown that the duty breached was owed to the injured person as an individual and was not merely the breach of an obligation owed to the public in general (*i.e.,* a duty to all is a duty to no one).' " *Bailey v. Town of Forks,* 108 Wash.2d 262, 737 P.2d 1257, 1259 (1987) (quoting *J & B Dev. Co. v. King Cy.,* 100 Wash.2d 299, 669 P.2d 468 (1983)).

Ms. O'Brien contends that her negligence claim falls within the "special relationship" exception to the public duty doctrine. We disagree. "To establish a special relationship, the plaintiff must show (1) some form of privity or direct contact between the government agency and plaintiff that sets the plaintiff apart from the general public; (2) the agency gave the plaintiff specific assurances that resulted in the agency undertaking a duty; and (3) the plaintiff justifiably relied upon those assurances." *Laymon,* 994 P.2d at 239 (citing *Taylor v. Stevens Cty.,* 111 Wash.2d 159, 759 P.2d 447 (1988)). Ms. O'Brien has not shown that agents of the City made any specific assurances to her, or that she relied on any such assurances.

Ms. O'Brien's reliance on *Garnett v. City of Bellevue,* 59 Wash.App. 281, 796 P.2d 782 (1990) is misplaced. In *Garnett,* the Washington Court of Appeals held that the public duty doctrine did not bar the plaintiff's claim against a police officer for negligent infliction of emotional distress, which was based on the officer's verbal abuse of the plaintiff. *Id.* at 785. Unlike the plaintiffs in *Garnett,* Ms. O'Brien bases her claim not on aspects of the officers' personal interaction with her but on the manner in which they conducted their investigation. The conduct of that investigation was the performance of a duty owed to the public at large. *Dever v. Fowler,* 63 Wash.App. 35, 816 P.2d 1237, 1242 (1991).

## V

We agree with Ms. O'Brien, however, that the district court abused its discretion by ordering her to pay $7,000 in attorney's fees to Appellees under 42 U.S.C. § 1988. "A prevailing defendant is awarded attorneys' fees [under § 1988] only where the action is found to be 'unreasonable, frivolous, meritless or vexatious.' " *Legal Servs. of N. Cal., Inc. v. Arnett,* 114 F.3d 135, 141 (9th Cir.1997) (quoting *Vernon v. City of Los Angeles,* 27 F.3d 1385, 1402 (9th Cir.1994)). Although Ms. O'Brien's claims ultimately failed, they simply do not meet that standard, and it was an abuse of discretion to conclude otherwise. *See Whitaker v. Garcetti,* 486 F.3d 572, 579 (9th Cir.2007). The award of attorney's fees is therefore vacated.[2]

**AFFIRMED IN PART AND VACATED IN PART.** Each party shall bear its own costs on appeal.

---

**2.** Because the district court properly granted summary judgment on the merits of Ms. O'Brien's claims, we need not discuss wheth-

er, as the district court found, Ms. O'Brien's claims were barred by judicial estoppel.